**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| J.S., III, a minor, by and through J.S., Jr. and M.S., his parents and next friends, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil Action No.   1:14cv1196-WHA |
| THE HOUSTON COUNTY BOARD OF, EDUCATION, | ) ) ) | (wo) |
| Defendant. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

This case is before the court on a Motion for Summary Judgment (Doc. #16), filed by the Defendant, the Houston County Board of Education.

The Plaintiff filed a Complaint in this case in December of 2014.   The Plaintiff, J.S., III, is a minor child who brings claims through his parents and next friends ("the Plaintiff" or "J.S."). The Plaintiff originally filed a case in 2012 which brought claims for violations of the Americans with Disabilities Act ("ADA") and §504 of the Rehabilitation Act, and other federal state law claims.   Several of the claims in that case were resolved, but the ADA and §504 claim were dismissed without prejudice so that the Plaintiff could exhaust his administrative remedies.   An administrative due process claim was filed and resolved.   The Plaintiff then filed the Complaint in this case bringing two claims for damages under §504 of the Rehabilitation Act and the ADA.

For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED.

## II.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion," relying on submissions "which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323.  Once the moving party has met its burden, the nonmoving party must "go beyond the pleadings" and show that there is a genuine issue for trial. *Id.* at 324.

Both the party "asserting that a fact cannot be," and a party asserting that a fact is genuinely disputed, must support their assertions by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56 (c)(1)(A),(B).  Acceptable materials under Rule 56(c)(1)(A) include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials."

To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law.   Fed. R. Civ. P. 56(a).

### III.  FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

The Houston County Board of Education ("the Board") is the entity that has responsibility for the control of the Houston County School System.   The Superintendent of the Houston County School System is Tim Pitchford ("Pitchford").   The Principal of Wicksburg High School in the Houston County School System, which is a kindergarten through twelfth grade school, is Cheryl Smith ("Smith").   The School System has a Code of Conduct, which the Plaintiff states in 2011-2012 did not set forth any policies against teacher-on-student disability harassment.

J.S. began attending Wicksburg High School in kindergarten.   J.S. has physical disabilities and cognitive impairments.   J.S. has cerebral palsy and needs a walker and wheelchair.   When J.S. began kindergarten, he received an Individual Education Program (IEP) to provide him a free, appropriate public education pursuant to the Individuals with Disabilities Education Act.   His IEPs required that he attend classes with students in the regular classroom and also receive personal tutoring and assistance in a special-education classroom or resource room.

In the 2010-2011 school year, which was third-grade for J.S., Drew Faircloth ("Faircloth") was assigned to J.S. as a teacher's aide.   Alicia Brown ("Brown") was J.S.'s special-education teacher in the third and fourth grades.   J.S.'s IEP did not specify that he had any discipline or behavior problems and his third and fourth-grade IEP's did not contain a behavior modification

3

plan.

Faircloth helped J.S. with going to the restroom, getting from place to place, getting his lunch, participating in physical education, and helped him to do assigned classwork. During September and October of 2011, and in January through March of 2012, Faircloth would take J.S. to the weight room to do his classwork. Matt Barton ("Barton"), the elementary p.e. teacher and a coach observed J.S. and Faircloth in the weight room and saw J.S. doing worksheets. Brandon Sunday ("Sunday") was also an elementary p.e. teacher and coach who observed J.S. doing worksheets in the weight room.

Smith, the principal, was informed that Faircloth was taking J.S. to the weight room. When Smith asked Faircloth about taking J.S. to the weight room, he told her that it was a more private area for J.S. to go to the restroom and it was a quieter area to work. (Doc. #15-15 at p.72: 5-10). Smith testified in her deposition that these reasons seemed reasonable to her. (Doc. #15-15 at p.74: 14-20).

In March of 2012, one of J.S.'s classmates reported behavior by Faircloth to her parents. The behavior she reported included that while in Angie Boatright's ("Boatright") regular classroom, Faircloth kicked J.S.'s wheelchair and Faircloth failed to get a pencil which J.S. dropped and could not pick up. The classmate's parents reported what the classmate had said to J.S.'s parents. J.S.'s mother spoke to J.S. who confirmed what the classmate had said. J.S.'s parents then placed digital recorders on J.S.'s wheelchair and recorded his school days on March 15 and 19.

J.S.'s parents listened to the recordings and became upset by the recordings which indicated that Faircloth and Brown yelled at J.S. They have also proffered expert testimony,

4

which is the subject of a Motion to Exclude, that there are sounds on the recording which are consistent with J.S. being slapped or hit.  The Plaintiff contends that long periods of silence in the recordings means that objectionable behavior on the part of Faircloth occurred while J.S. was in the weight room.

J.S.'s parents contacted the Board's Special-Education Coordinator Denise Whitfield ("Whitfield").  J.S. parents expressed that they did not want J.S. with Brown and Faircloth.  They met with Whitfield and the reporting classmate's parents on March 20, 2012.  They played portions of the recordings for Whitfield.  Pitchford then directed Whitfield to assign J.S. a new teacher and aid, which Whitfield did that same morning, Tuesday March 20.

On March 21, J.S.'s IEP team met and changed his IEP to reflect a new special-education teacher and aid, and additional services.  Pitchford called Smith and instructed her to put Faircloth and Brown on administrative leave.

Pitchford decided to bring Brown and Faircloth off of administrative leave, but gave Whitfield and Smith directions for Brown and Faircloth not to interact with J.S.  Smith met with Faircloth and Brown on the day they returned to work.  She instructed Faircloth to work on the high school hallway and instructed Brown to have another adult employee with her if she interacted with a student.  Brown and Faircloth were off of administrative leave for one day. Faircloth resigned and Pitchford recommended to the Board, and the Board voted, to non-renew Brown's contract.

The Plaintiff has presented expert evidence that the principal and teachers acted negligently in preventing Faircloth from taking J.S. out of the classroom and to the weight room. (Doc. #28-24 at p.22-23).  The expert offers the opinion that due to "the negligence of the

5

Wicksburg school officials and the Houston County Board of Education," J.S. did not receive the care he should have received while at school. (Doc. #28-24 at p.24).

## IV. DISCUSSION

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, ... be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, § 504(a) provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, ... be subjected to discrimination under any program or activity receiving Federal financial assistance. . . ." 29 U.S.C. § 794(a).

Because under both the ADA and §504 a plaintiff must show that he is disabled, was subjected to discrimination or harassment on the basis of his disability, actual knowledge, and deliberate indifference, the court will analyze the claims together as the parties have done. *See Moore v. Chilton Cnty. Bd. of Educ.*, 1 F. Supp. 3d 1281, 1292 (M.D. Ala. 2014).

The Eleventh Circuit has held that intentional discrimination under §504 can be proven by a showing of deliberate indifference. *Liese v. Indian River Cnty. Hosp. Dist.*, 701 F.3d 334 (11th Cir. 2012). Deliberate indifference requires a showing of more than gross negligence, and requires a showing that the indifference was a deliberate choice, which is an exacting standard. *Id.* at 344. A separate standard governs whether deliberate indifference of employees can be attributed to an organization. *Liese,* 701 at 349. Under that standard, for the organization to be held liable, there must be deliberate indifference of "an *official* who at a minimum has *authority* to address the alleged discrimination and to institute corrective measures on the [organization's] behalf, [and who] has *actual knowledge* of discrimination . . . and fails adequately to respond." *Id.* (emphasis and alterations in original)(quoting *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274

(1988)). The *Liese* court emphasized that the requirement that there be an "official" is distinct from the requirement that the official have knowledge of and authority to correct a discriminatory practice. *Id.* An "official" is someone who enjoys substantial supervisory authority within an organization's chain of command so that when dealing with the complainant, the official had complete discretion at a key decision point in the administrative process. *Id.* at 350.

There is apparently no dispute that J.S. is disabled and qualified for special education services. The Board argues, however, that J.S. cannot show intentional discrimination by the Board and that at most J.S. has presented evidence of negligent acts or omissions. The Board also argues that J.S. cannot show that an appropriate person with the Board had actual knowledge that Faircloth was physically and verbally abusing J.S. and had actual knowledge that Brown was verbally abusing J.S. Finally, the Board argues that J.S. cannot show that an appropriate person with the Board acted with deliberate indifference to the alleged harassment or abuse upon receiving actual notice of it.

In response to the Motion for Summary Judgment, the Plaintiff's brief states that under the "ADA and §504, the most obvious form of discrimination" which J.S. suffered was "his removal from the regular classroom to the weight room, his exclusion from the resource room, his isolation in the weight room, his involuntary separation from his regular classroom peers, his separation from his special-education peers, and his inability to obtain the general education services from Ms. Boatright that he was supposed to receive in the environment where he was to receive them." (Doc. #29 at p. 57).

Plaintiff brief's characterization of his claims, therefore, appears to identify two separate theories of liability: one, that placement of J.S. in the weight room was actually known by school

7

officials and therefore gave actual notice of the possibility of discrimination, and two, that placement of J.S. in the weight room itself constituted a violation of law of which school officials had actual knowledge.  The court will address each theory in turn.

<u>Liability Based on Actual Notice of the Possibility of Discrimination</u>

The Plaintiff's claim regarding the "possibility of discrimination" derives from *Doe v. School Bd. of Broward Cnty.*, *Florida*, 604 F.3d 1248 (11th Cir. 2010).  The Plaintiff's brief points out that in *Broward Cnty.*, the court concluded that knowledge of lesser harassment may provide actual notice of sexually violent conduct.  604 F.3d at 1258.  In that case, a student was sexually assaulted by a teacher.  Although the assault was the first of that student by the teacher, there had been previous complaints by two other students against the same teacher of sexual harassment and misconduct.  *Id.* at 1250.  The court compared the case to one in which an assault occurred after the defendant institution had knowledge of previous "lesser sexual harassment," which constituted a claim under Title IX, and concluded that harassment which "resembled [the plaintiff's] assault in significant respects" could provide actual notice to the school board.  *Id.* at 1259.

The Plaintiff's reliance on *Broward Cnty.* in this case requires too broad a reading of that decision because the Plaintiff seems to interpret the court's consideration of "lesser" acts as meaning that any act which might be deemed inappropriate, no matter how unrelated to acts ultimately complained of by the plaintiff, can be evidence of actual notice.  Courts, however, consistently acknowledge that "complaints that are 'too general' are insufficient to provide actual notice." *Moore*, 1 F. Supp. 3d at 1300 (quoting *Hawkins*, 322 F.3d at 1285).  In *Broward Cnty.*, the court acknowledged that the Supreme Court in *Gebser* held that some prior allegations of

8

harassment may be sufficiently minimal and "far afield" from the conduct underlying the claim that they would not alert a school district official of a risk of sexual harassment. 604 F.3d at 1258.

In a case decided before *Broward Cnty.*, the Eleventh Circuit concluded that a complaint of incidental touching during an athletic event and a "perceived imminent" touching of a student could not, as a matter of law, give a school board knowledge of a possibility that the teacher was molesting other students. *See Davis v. DeKalb Cnty. School Dist.*, 233 F.3d 1367, 1373 (11th Cir. 2000). In *J.F.K. v. Troup Cnty. Sch. Dist.*, 678 F.3d 1254, 1262 (11th Cir. 2012), a case applying both *Broward Cnty.* and *Davis*, the court concluded that conduct which "contains no sexual harassment or gender discrimination component" was not sufficient to create a question of fact as to actual notice sufficient to alert the appropriate official to the possibility of sexual harassment. The court explained that although a school official knew of the teacher's conduct that "was inappropriate, devoid of professionalism, and reeked of immaturity," the known conduct was not of a sexual nature, and therefore did not fall within the reasoning of *Broward Cnty.* and establish actual notice. *Id.* at 1261.

While the instant case is a case of verbal and physical abuse of a student by a teacher's aide and teacher on the basis of disability, the framework for analysis for Title IX and §504/ADA is the same. *See Moore*, 1 F. Supp. 3d at 1292 (applying student against student sexual harassment cases to student against student disability harassment claim). Therefore, the court will apply the guidance of *Davis*, *Broward Cnty.*, and *J.F.K.* that the "lesser acts" actually known must be sufficiently related to the conduct which forms the basis of a plaintiff's claim to create a question of fact as to actual notice.

The evidence of actual knowledge of disability discrimination, as characterized by the

9

Plaintiff's brief, is evidence of knowledge by school employees that J.S. was not being educated in the correct setting, but was instead being removed to the weight room. The Plaintiff's theory in brief appears to be that because employees knew that J.S. was being taken to the weight room, they had actual notice that verbal and physical abuse were also occurring.   The Plaintiff has not pointed to evidence of known lesser acts of verbal or physical abuse of J.S. which would have given the Defendant actual notice of the abuse documented in the recordings.[1]  Furthermore, unlike in the cases discussed above, there is no evidence before the court of any known abusive behavior toward other students by Faircloth or Brown.   In fact, the court notes that J.S.'s mother testified in her deposition that she had no evidence or information that Faircloth or any other Defendant employee hit or verbally abused any other special education student.   (Doc. #15-5 at p. 279:18-81:21).   Placement in the weight room under the facts as presented to the court bears no similarity to verbally abusing or physically striking a child.   Without evidence of actual knowledge of any conduct on the part of Faircloth, Brown, or any other Defendant employee that is similar to, although not necessarily rising to the level of, the verbal or physical abuse J.S. ultimately reported, the court cannot conclude that a question of fact has been raised as to actual notice on the part of the Board of a possibility of verbal or physical harassment of J.S. on the basis of his disability. *See Moore*, 1 F. Supp. 2d at 1303 (finding that plaintiffs failed to demonstrate that

---

1  It does not appear that the Plaintiff intends to rely on the report of J.S.'s classmate of Faircloth's actions in the regular classroom as a basis for a claim, because that report was to the classmate's parents, not school officials, and prompted the recordings which were made known to the Defendant.   The court also has not been pointed to evidence that any appropriate person had knowledge of the conduct by Faircloth which J.S.'s classmate reported.   To the extent that the Plaintiff relies on a theory that Faircloth had knowledge of his own actions, that theory is foreclosed. *Gebser*, 524 U.S. at 291 (stating "Where a school district's liability rests on actual notice principles, however, the knowledge of the wrongdoer himself is not pertinent to the analysis.").

the substance of the notice to a school employee was sufficient to alert her to the possibility of disability harassment where employee knew only that a student was teasing another student, but did not know the nature of the teasing). Summary judgment is, therefore, due to be granted as to this aspect of the Plaintiff's claims.

<u>Liability Based on Actual Knowledge of Discrimination</u>

The Plaintiff's brief states that taking J.S. to the weight room and removing him from his regular classroom "is a clear violation of his IEP that amounts to discrimination." (Doc. #29 at p.58).[2]

Section 504 and the ADA prohibit discrimination on the basis of disability.[3] For purposes

---

2   With respect to any claim based on the response to the report of the recordings made known to the Board, the Board points to evidence that J.S.'s parents met with Whitfield and then the decision was made to replace Faircloth and Brown as service providers for J.S. Faircloth and Brown were placed on administrative leave. They returned from leave for one day, but were instructed not to be located within the school near J.S. The Plaintiff does not contest this evidence, and presents no argument of deliberate indifference in the Defendant's response to the report to Whitfield of Faircloth and Brown's actions. Therefore, it appears that the Plaintiff no longer asserts a separate claim of deliberate indifference once the conduct at issue was reported by J.S.'s parents.

3   42 U.S.C. §12182(b)(2)(A) states that discrimination includes
**(i)** the imposition or application of eligibility criteria that screen out or tend to screen out an individual with a disability or any class of individuals with disabilities from fully and equally enjoying any goods, services, facilities, privileges, advantages, or accommodations, unless such criteria can be shown to be necessary for the provision of the goods, services, facilities, privileges, advantages, or accommodations being offered;
**(ii)** a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages, or accommodations;
**(iii)** a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden;

of the claim earlier discussed, namely, that the Defendant had actual notice of physical and verbal abuse, this court examined what was known to school officials and assumed for purposes of analysis that the conduct identified was intentional discrimination on the basis of disability.  The Plaintiff's second claim in this case is a claim of deliberate indifference in failing to stop Faircloth from removing J.S. from the regular classroom to the weight room.  While the first-discussed claim involved application of the deliberate indifference standard to the issue of "*whose* discriminatory intent may be attributed," the second claim also presents the issue of "*what* constitutes discriminatory intent."  *Liese*, 701 F.3d at 349 (emphasis in original).

Deliberate indifference requires a showing of more than gross negligence, and requires a showing that the indifference was a deliberate choice. *Id.* at 344.  The deliberate indifference standard requires a plaintiff to "prove that the defendant knew that harm to a federally protected right was substantially likely and that the defendant failed to act on that likelihood."  *Id.* Therefore, for the removal to the weight room claim, the court must determine whether there is a question of fact that allows for the conclusion that failure to prevent removal to the weight room, separate and apart from disability verbal and physical abuse, constituted deliberate indifference.

The Plaintiff's brief points to evidence of what J.S.'s teachers knew about his Individual Education Plan ("IEP").  For example, the brief states that Smith's response to reports that J.S. was being taken to the weight room was unreasonable in part because there is evidence that she did not review his IEP (Doc. #29 at p.58) and that Faircloth removed J.S. from the regular classroom

---

**(iv)** a failure to remove architectural barriers, and communication barriers that are structural in nature, in existing facilities, and transportation barriers in existing vehicles and rail passenger cars used by an establishment for transporting individuals (not including barriers that can only be removed through the retrofitting of vehicles or rail passenger cars by the installation of a hydraulic or other lift), where such removal is readily achievable;

even though he was generally unaware of the requirement of J.S.'s IEP (Doc #29 at p. 59). The Plaintiff's brief also states the Brown was deliberately indifferent because she had the responsibility to enforce J.S.'s IEP, which required him to be in his regular classroom. (Doc. #29 at p. 59). The Plaintiff does not cite authority for the proposition that this conduct is discrimination under §504/ADA.

The Board has argued that the Plaintiff has not brought a count for violation of the Individuals with Disabilities in Education Act ("IDEA") , and that any such claims were resolved or settled through the administrative due process procedure. The Board argues that Section 504 does not create general tort liability for educational malpractice, but instead a claim must be based on bad faith or gross misjudgment, and not a mere failure to provide a free and appropriate public education ("FAPE"), citing *Mrs. H. v. Montgomery Co. Bd. of Educ.*, 784 F. Supp. 2d 1247, 1263 (M.D. Ala. 2011).

To prove discrimination in the education context, courts have held that something more than a simple failure to provide a FAPE under the IDEA must be shown. *N.L. ex rel. Mrs. C. v. Knox Cnty. Sch.*, 315 F.3d 688, 695 (6th Cir. 2003); *Estate of Lance v. Lewisville Indep. Sch. Dist.*, 743 F.3d 982, 992 (5th Cir. 2014). "A plaintiff must also demonstrate some bad faith or gross misjudgment by the school or that he was discriminated against solely because of his disability." *K.I. ex rel. Jennie I. v. Montgomery Pub. Sch.*, 805 F. Supp. 2d 1283, 1292 (M.D. Ala. 2011) (quoting *W.C. ex rel. Sue C. v. Cobb Cnty. Sch. Dist.*, 407 F.Supp.2d 1351, 1363–64 (N.D. Ga. 2005)). A plaintiff must prove that her or she has either been subjected to discrimination or excluded from a program or denied benefits by reason of their disability. *Sellers by Sellers v. Sch. Bd. of City of Manassas, Va.*, 141 F.3d 524, 528-29 (4th Cir. 1998). A school does not violate

§504 "by merely failing to provide a FAPE, by providing an incorrect evaluation, by providing a substantially faulty individualized education plan, or merely because the court would have evaluated a child differently." *Mrs. H.*, 784 F. Supp. 2d at 1263 (citation and quotation omitted). The deliberate indifference standard "is a very high standard to meet." *Id.* at 1268.

The Plaintiff's brief does not compare J.S.'s situation to any other student to show that he was treated differently or excluded from something that other students received. *See Estate of Lance*, 743 F.3d at 993 (explaining that if IDEA requirements are satisfied, for §504 liability, a plaintiff could demonstrate that a state benefit was being denied which is given to non-disabled peers). The Plaintiff's brief also has not attempted to present evidence to support a finding that the departure from the IEP in this case was gross misjudgment,[4] but instead has characterized the claim as being that because J.S. was excluded from his regular classroom which violated the IEP, he suffered intentional discrimination in violation of § 504/ADA. (Doc. #29 at p.58). In light of persuasive authority which counsels against a finding of intentional discrimination where there merely is failure to follow an IEP, the court cannot conclude that there is a claim of intentional discrimination under §504/ADA based merely on the fact that J.S. was taken to the weight room rather than being educated in the regular classroom or resource room as directed by his IEP.

<u>Liability Based on Policies</u>

Finally, the Board has moved for summary judgment as to allegations within the Complaint that the Board has failed to make certain policies, define procedures and words, and

---

4  The Plaintiff's expert has provided the opinion that "[d]ue to the negligence of the Wicksburg school officials and the Houston County Board of Education, J.S. III was placed in a situation where he did not receive the care and nurturing that he should have while attending Wicksburg School." (Doc. #28-24 at p.24). Negligence is not sufficient to support a claim of gross misjudgment. *J.D.P. v. Cherokee Cnty., Ga. Sch. Dist.*, 735 F. Supp.2d 1348, 1367 (N.D. Ga. 2010.

explain disabled students' rights. It does not appear, however, that the Plaintiff intended to base a separate intentional discrimination claim on the failure to provide certain policies because, although the Plaintiff has set forth evidence regarding the lack of policies in the fact section of his brief, the Plaintiff has not argued that summary judgment is due to be denied on the basis of such a separately-stated claim. If such a claim is asserted, however, summary judgment is due to be granted as to it. *See Gebser*, 524 U.S. at 291-92 (holding that an alleged failure to promulgate an effective policy and grievance procedure for harassment claims does not establish actual notice and deliberate indifference or constitute discrimination).

## V. CONCLUSION

For the reasons discussed, the Motion for Summary Judgment is due to be and is hereby ORDERED GRANTED.

All other pending motions (Doc. #14, 18, 20) are ORDERED DENIED as moot.

A separate Judgment will be entered in accordance with this Memorandum Opinion and Order.

Done this 3rd day of August, 2015.

/s/ W. Harold Albritton
W.  HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE